UNITED STATES DISTRICT COURT
for the
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 FEB -3 PM 1:07

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TWO APPLE IPHONES, FURTHER DESCRIBED IN ATTACHMENT A, CURRENTLY IN THE CUSTODY OF THE BURLINGTON, VT ATF FIELD OFFICE IN BURLINGTON, VERMONT | Case No. 2:23-mj-16 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Brian Wood, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I submit this affidavit in support of finding probable cause to search two electronic devices ("Subject Devices") recovered by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Burlington Field Office ("FO") during the arrest of Ronald HARRIS on January 18, 2023, in Shelburne, VT.  The Subject Devices are described with greater particularity in Attachment A, attached hereto and incorporated herein.  The applied for warrant would authorize the forensic examination of the Subject Devices for the purpose of identifying electronically stored data particularly described in Attachment B.  Specifically, law enforcement recovered and currently has secured in ATF custody in Burlington, Vermont, the following:

    a. One black Apple iPhone with a clear case bearing IMEI: 353040119723038

       ("SUBJECT DEVICE 1")

    b. One red Apple iPhone in a clear case bearing IMEI: 350108849485898

       ("SUBJECT DEVICE 2")

1

2.      I am a Special Agent with the ATF, duly appointed according to law and acting as such. Accordingly, I am a federal law enforcement officer authorized to investigate violations of the laws of the United States and to request warrants pursuant to the Federal Rules of Criminal Procedure. I have been a Special Agent with the ATF for over 6 years. My assignments have included investigating criminal violations of federal firearms statutes and narcotics offenses related to the possession and distribution of controlled substances. Prior to my employment with ATF, I was employed by the United States Border Patrol as a Border Patrol Agent for over 6 years, during which time I also participated in investigations of narcotics offenses and violations of federal firearms statutes.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Unless otherwise noted, the statements included in this affidavit are described in sum and substance rather than verbatim.

4.      Based on the facts as set forth in this affidavit, there is probable cause to believe the subject devices described in Attachment A contains evidence that Ronald HARRIS committed violations of 21 U.S.C. § 846 (conspiracy to distribute controlled substances) and 21 U.S.C. § 843 (use of a communication facility to facilitate the distribution of controlled substances).

**PROBABLE CAUSE**

5.      On October 25, 2022, November 21, 2022, and December 22, 2022, the Honorable Kevin Doyle, United States Magistrate Judge for the District of Vermont, authorized search warrants for location data for the T-Mobile cellular telephone assigned call number 215-

971-3196 (SUBJECT DEVICE 1) under this case number. DEA Task Force Officer (TFO) Phil Tremblay submitted affidavits in support of the applications for those warrants. The contents of TFO Tremblay's affidavits remain true and correct to the best of my knowledge and included the following key facts about HARRIS's drug trafficking organization and SUBJECT DEVICE 1:

    a. Ronald HARRIS AKA "Rizz" or "Low" was identified as a member of a Drug Trafficking Organization (DTO) facilitating the distribution of illegal drugs in the state of Vermont. HARRIS was believed to be a cell-head who traveled between Philadelphia, PA and Burlington, VT, transporting bulk currency and drugs.

    b. The investigation into the DTO was initiated in October 2021. By December 2022, law enforcement had conducted 17 controlled purchases into the DTO.

    c. During the course of the investigation, law enforcement learned HARRIS used SUBJECT DEVICE 1 to communicate with individuals about the DTO. Between 1/1/2022 and 8/17/2022, SUBJECT DEVICE 1 was in contact with the DTO's customer phone over 600 times.

    d. On multiple occasions, including in November and December 2022, law enforcement observed HARRIS in Chittenden County, Vermont for short periods of time. Analysis of information regarding SUBJECT DEVICE 1 obtained pursuant to prior warrants showed SUBJECT DEVICE 1 moving from Philadelphia to Vermont during these periods.

6. On January 12, 2023, the Grand Jury in Burlington, Vermont returned an indictment charging HARRIS and others with conspiring to distribute controlled substances in Vermont between October 2021 and January 2023 under docket number 2:23-cr-4. The Grand Jury in

Burlington, Vermont returned a superseding indictment adding additional named members to the conspiracy on January 26, 2023 under the same docket number.

6. On January 17, 2023, as a result of a previously executed federal search warrant for cellular telephone location data, members of the ATF Burlington FO, DEA Resident Office (RO) and Burlington Police Department (BPD) observed that Ronald HARRIS's cellular phone associated with phone number (215) 971-3196 (SUBJECT DEVICE 1) appeared to be travelling from the area of Philadelphia, PA to Vermont. Members of the ATF Burlington FO and DEA Burlington RO planned to identify and arrest HARRIS on a federal arrest warrant obtained on January 12, 2023, in the District of Vermont while he was in Vermont. Agents and officers conducted surveillance of a subject later determined to be HARRIS upon his arrival to Burlington, VT and determined he was operating a silver Honda Accord Avis rental vehicle bearing Virginia license plate UCG8794. HARRIS was previously observed by law enforcement operating this same vehicle during a trip to Vermont from Philadelphia, PA two weeks prior on January 3, 2023. Law enforcement conducted surveillance of HARRIS as he travelled to and from 229 Pearl Street, Apartment C, in Essex Junction, VT over approximately the next three hours.

7. At approximately 11:47 PM, while conducting surveillance of 229 Pearl Street, Apt. C, Essex Junction, VT, BPD Detective (Det.) Chase Vivori observed a subject later identified as Ronald HARRIS exit 229 Pearl Street, Apt. C and place a package into the trunk of the silver Honda Accord bearing Virginia license plate UCG8794. Det. Vivori then observed HARRIS enter the driver's seat of the vehicle and drive the vehicle out of the parking area of 229 Pearl Street onto VT Route 15. After the rental vehicle left 229 Pearl Street, DEA TFO Tremblay observed the silver Honda travelling westbound on VT Route 15 near the UVM

4

Medical Center Fanny Allen Campus. DEA TFO Jason Perry then observed the silver Honda Accord travelling westbound on VT Route 15 in the area of Lime Kiln Road. DEA Special Agent (SA) Kevin Kadish observed the silver Honda Accord enter I-89 southbound at Exit 15 and maintained surveillance of the vehicle as it travelled southbound until exiting at Exit 13. SA Kadish maintained surveillance of the silver Honda Accord as it travelled to the area of the intersection of US Route 7 and I-189 in Shelburne, VT. SA Kadish then observed the silver Honda Accord travel southbound on US Route 7 into Shelburne, VT. Near the intersection with of Webster Rd and US Route 7 in Shelburne, VT, SA Kadish ended his surveillance of the vehicle as ATF SA Samuel Brown and I observed the vehicle continuing southbound on US Route 7. SA Samuel Brown and I maintained surveillance of the vehicle until members of the ATF Burlington Field Office and ATF Springfield Field Office initiated a vehicle stop on the silver Honda Accord at approximately 12:08AM on January 18, 2023, in an attempt to identify and arrest Ronald HARRIS in the area just south of the intersection of Graham Way and US Route 7 in Shelburne, VT. I identified the driver and sole occupant of the vehicle as Ronald HARRIS at the time of his arrest.

8.	ATF SAs Samuel Brown, Matthew Ekstrom, Zachary Mercer and ATF TFO Dane Jobst searched HARRIS's person and recovered the following. SA Mercer recovered one red Apple iPhone in a clear case bearing IMEI: 350108849485898 (SUBJECT DEVICE 2) from HARRIS's right pocket. Approximately $7,439.00 in total in U.S. currency was recovered from HARRIS's person. Two bundles kept together with rubber bands of $5,000.00 and $2,000.00 respectively were found by SA Brown in HARRIS's coat pocket. SA Mercer recovered a wallet from HARRIS's pants pocket that contained an additional $439.00, a Pennsylvania driver's

5

license for Ronald HARRIS, and a Navy Federal Credit Union Debit Card in Ronald HARRIS's name.

9. Law enforcement arranged for the Honda Accord rental vehicle to be towed. Prior to the rental vehicle being towed, ATF SAs Matthew Ekstrom, Scott Murray and I searched the silver Honda Accord to preserve any evidence or valuable property prior to turning the vehicle over. I knew HARRIS to carry two cellular phones, but only one was recovered from HARRIS's person. We recovered the following during the search of the vehicle: I recovered a blue reusable grocery bag from the trunk of the vehicle with advertisements for the Burlington Fire Department and various Vermont business that was held closed by several rubber bands. I recovered a quantity of U.S. currency totaling over $91,000.00 from inside the bag. The currency was found separated into bundles that were held together by rubber bands. SA Ekstrom recovered a black Apple iPhone in a clear case, bearing IMEI: 353040119723038 (SUBJECT DEVICE 1) from the center console of the rental vehicle. The iPhone was plugged into the vehicle via USB at the time.

10. While observing SUBJECT DEVICE 1 ATF SA Matthew Ekstrom called phone number (215) 971-3196. SA Ekstrom then observed SUBJECT DEVICE 1 ring and display SA Ekstrom's phone number. While observing SUBJECT DEVICE 2, SA Ekstrom called phone number (802) 488-4614. SA Ekstrom then observed SUBJECT DEVICE 2 ring and display SA Ekstrom's phone number. SA Ekstrom then transported the two recovered Apple iPhones to Vermont State Police (VSP) Detective Sergeant Dustin Robinson to determine if data could be extracted and preserved from the iPhones pending a search warrant for review. Detective Sergeant Robinson determined the iPhones would need to be unlocked in order for data to be extracted and preserved. Detective Sergeant Robinson maintained custody of the iPhones until

turning them over to VSP TFO Jacob Renning on January 23, 2023. I met with TFO Renning and took custody of the iPhones on January 23, 2023. I maintained custody of the SUBJECT DEVICES until securing them in the Burlington Field Office evidence vault.

11. On January 18, 2023, ATF SA Samuel Brown and I transported Ronald HARRIS to Northwest State Correctional Facility pending his initial appearance. I read HARRIS his Miranda Rights and SA Brown and I conducted an audio recorded interview. During this interview, HARRIS asked SA Brown and I several times about the severity of the charges against HARRIS. HARRIS also asked me multiple times how law enforcement knew HARRIS's location. Near the end of the interview, HARRIS stated he thought law enforcement may have mistaken him for someone else. I replied that if HARRIS felt that way, he could help expedite proving whether or not it was a case of mistaken identity. I told HARRIS that he could consent to the search of his two cellular phones that were seized, which would help easily prove whether it was a case of mistaken identity, or not. HARRIS replied that there was no need to rush things.

12. Shortly after HARRIS's arrest, members of the DEA Burlington RO, BPD and other agencies executed a federal search warrant on 229 Pearl Street, Apartment C, Essex Junction, VT. On the initiation of the execution of the search warrant, two reusable grocery bags appeared to be thrown from a window of the southwest bedroom of Apartment C. One of the bags was determined to contain approximately 13,500 bags of a substance a sample of which field-tested positive for fentanyl, packaged in 15-bag bundles of small red envelopes. The other bag was determined to contain approximately 1.3 kilograms of a substance that field-tested positive for cocaine base. During the execution of this search warrant, law enforcement encountered James Morgan, Rahsheed Stokes-Johnson, Eric Weaver and Shamir Elliott. After being arrested and read his Miranda Rights, Weaver stated that he got a ride to 229 Pearl

7

Street, Apartment C from "Rizz". Weaver also stated that he knew "Rizz" was involved in the distribution of illegal drugs. Based on the prior investigation in this case, I am aware that "Rizz" is a nickname for RONALD HARRIS.

## TRAINING AND EXPERIENCE

13. Based on my training and experience, I also know the following:

   a. Persons who participate in the distribution of controlled substances frequently use cellular telephones, among other communications devices, to coordinate their unlawful activities and to maintain contact with suppliers and consumers of illegal drugs.

   b. Information stored in the memories of these communication devices constitutes evidence of drug trafficking. Among other things, the evidence may contain the telephone numbers assigned to the communication devices, messages received by or sent from the devices, identification numbers and other information contained in their electronic memories, and the records of telephone numbers to which calls were placed and from which calls were received. The device may also contain GPS or similar location information indicating where the devices have traveled.

   c. With their cellular phones, drug dealers often take photographs or videos of drugs, drug paraphernalia, guns, other members of their organizations, cash and assets obtained from profits of drug sales, and locations associated with their illegal activity. These photographs or videos may be stored in the memory of those cellular phones.

   d. Distributors of controlled substances often carry firearms to protect both their product as well as any profits they may obtain from their distribution activities. I have participated in investigations (related to the distribution of controlled substances) in which evidence of unlawful purchases and possession of firearms have been found in the data stored in

cellular telephones, including photos stored in the cellular telephone memory – some of which have depicted firearms or individuals possessing firearms – text messages or calls to arrange the purchase of a firearm, or contact with a seller of a firearm through an online advertisement. Often, the same cellular telephones contain evidence related to the distribution of controlled substances, including photographs of controlled substances and bulk United States currency.

## INFORMATION REGARDING ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

9

      c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic device was used, the purpose of its use, who used them, and when.

      d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant. It may be necessary to conduct the examination with forensic equipment outside the District of Vermont.

    17. *Manner of execution.* Because this warrant seeks only permission to examine device already in law enforcement's possession, the execution of this warrant does not involve

10

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

18. Based on the foregoing, I submit there is probable cause to search the contents of the Subject Devices, specifically described in Attachment A, for the evidence delineated in Attachment B.

Dated at Burlington, in the District of Vermont, this 3 day of February. 2023

_____
Brian Wood
Special Agent, ATF

Sworn to and subscribed before me this 3 day of February.

_____
HONORABLE KEVIN J. DOYLE
United States Magistrate Judge

11